## Westinghouse Air Brake Company *v.* Pittsburgh, Appellant.

Argued October 10, 1934.  Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

374

*Anne X. Alpern,* Assistant City Solicitor, with her *Ward Bonsall,* City Solicitor, and *Thomas M. Benner,* First Assistant City Solicitor, for appellant.

*William H. Eckert,* with him *Allen T. C. Gordon,* of *Smith, Buchanan, Scott & Gordon,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 26, 1934:

Appellee was the owner of five blocks of land in the City of Pittsburgh on one of which was erected a manufacturing plant, consisting of a general office, machine shops, pattern, assembly, foundry, boiler and incinerator buildings. The buildings were composed mostly of brick, and covered 139,000 square feet of ground. The other blocks had built thereon dwellings, tenement houses and delivery yards.

The City in 1927 decided to change the grade of the streets. The work was commenced in 1928 and took five years to complete. The property was originally on a level with the grade of the surrounding streets. After the grade was completed, the street was raised from 4½ to 9 feet, the connecting streets being raised to conform to the new grade of the principal thoroughfares. The result was to leave appellee's property in a hollow, making it impracticable to use it either for plant, residence or other purposes unless it was made to conform to the new grade. The cost of doing the latter work, if carried out, would have approximated $250,000.

Shortly after the work commenced, the Standard Stoker Company which had leased the property moved

out. They had leased it for $70,000 a year. The total amount of rent collected during the five years of construction was $18,000. The plant as a manufacturing plant has since been razed and the land is unoccupied where the buildings stood.

In the proceeding to recover damages, the jury awarded $173,600. The testimony on market value before and after varied with each witness. The city claimed that the property had been benefited by the change of grade. On the entry of judgment, the city appealed.

In condemnation cases, to ascertain the damages accruing to an owner from the appropriation of his land or the consequential injury that may follow such appropriation, the usual and ordinary standard is the difference in the market value before and after taking. Estimates as to the costs of rebuilding specific items of property or injury to particular uses affected by the taking, are not recoverable or admissible as distinct items of damage, but such losses may become useful as elements bearing on the market value before and after the appropriation.[1]

Opinions as to market value should be based on the general selling price of properties in the neighborhood, or on sums at which similar properties are held: Friday v. P. R. R. Co., 204 Pa. 405; Appeal of Penna. Co. for Ins. on L. & G. Annuities, 282 Pa. 69, 74; Fessler v. Schuylkill Haven G. & W. Co., 69 Pa. Superior Ct. 331; even if there is but one sale of property similarly situated

---

[1] Railway Co. v. McCloskey, 110 Pa. 436; Pa. S. V. R. Co. v. Cleary, 125 Pa. 442, 452; Chambers v. So. Chester Boro., 140 Pa. 510; Harris v. R. R. Co., 141 Pa. 242; Dawson v. Pittsburgh, 159 Pa. 317; Patton v. Phila., 175 Pa. 88; Gorgas v. R. R. Co., 215 Pa. 501; Hamory v. R. R. Co., 222 Pa. 631; Coons v. McKees Rocks Boro., 243 Pa. 340; Kleppner v. Pittsburgh, etc., R. R. Co., 247 Pa. 605; Stone v. Delaware, L. & W. R. R. Co., 257 Pa. 456; Greenfield v. Phila., 282 Pa. 344, 355; McSorley v. Avalon Boro., 291 Pa. 252; Hill v. Oakmont Boro., 47 Pa. Superior Ct. 261; Lynn v. Dunmore Boro., 80 Pa. Superior Ct. 590; Jordan v. Clearfield Co., 107 Pa. Superior Ct. 441. See also Act of April 21, 1915, P. L. 159; Act of 1929, P. L. 1278, section 527, page 1354.

or in the locality, the witness is competent to testify.[2]  If there are no sales of properties in the neighborhood, values of land may be shown by persons generally acquainted with the property whose knowledge and experience qualify them to form a judgment as to value.  See note 3, post.  In New York it has been held that offers to sell in the ordinary course of business may be the basis for an opinion of market value: Harrison v. Glover, 72 N. Y. 451.  Option prices, fixed prior to the improvement or the occasion for taking testimony, have been held competent for disputing an opinion as to value: Appeal of Penna. Co. for Ins. on L. & G. Annuities, supra, at 76; Rea v. Pgh. Ry. Co., 229 Pa. 106, 119.

Market value or damages may be established by the owner of the property, by expert witnesses, or by persons with knowledge and experience qualifying them to form a reasonably intelligent judgment as to value.[3]  An owner through personal knowledge of his property, with a reasonable opportunity to observe its area, the uses to which it may be put, the extent and condition of any improvements thereon, possesses sufficient knowledge from which to form an opinion as to the value of his own property.  Such an owner may not be familiar with the general prices of property in the neighborhood, nor may he possess all the qualifications that would be required of others who testify as to value.  Nevertheless, because he is an owner with a general knowledge of his property, he is a competent witness: Markowitz v. P. & C. R. R. Co., 216 Pa. 535, 537; Chauvin v. Sup. F. Ins. Co., 283 Pa. 397,

---

[2] Pgh. & L. E. R. Co. v. Robinson, 95 Pa. 426;  Hope v. R. R. Co., 211 Pa. 401;  Rea v. Pgh. Ry. Co., 229 Pa. 106;  Appeal of Penna. Co. for Ins. on L. & G. Annuities, 282 Pa. 69, 74.  Compare Wadsworth v. Mfr.'s Water Co., 256 Pa. 106.

[3] P. & R. Coal & Iron Co. v. Northumberland Co. Com'rs, 229 Pa. 460, 466, 467;  White v. R. R. Co., 222 Pa. 534;  Penna. Co. for Ins. on L. & G. Annuities v. Phila., 268 Pa. 559, 562;  Wissinger v. Valley Smokeless Coal Co., 271 Pa. 566;  Appeal of Penna. Co. for Ins. on L. & G. Annuities, 282 Pa. 69, 75.

401; Whitekettle v. Ins. Co., 293 Pa. 385, 388; Barron's Use v. Ry. Co., 93 Pa. Superior Ct. 559.

An expert witness or a witness who is familiar with the property, must possess a general knowledge of the values of property in the neighborhood, sufficient to base an opinion as to market value. The standard of qualification for persons living in the immediate vicinity may not be quite as rigid as it is for an expert, but they should know generally the value of property in the vicinity. We have stated these rules at length not only because of their applicability but because of the turn which the case took at trial.

Mr. Rowan, president of appellee company, one of the three witnesses who valued the property, was called as a witness to describe generally the conditions of appellee's property affected by the change of grade, the buildings thereon, and the business connected therewith. He also stated that he knew the cost of two pieces of land which formed a part of that affected by the change. His description of appellee's holdings was thorough and in detail. Without any further effort to ascertain his knowledge of the values of real estate in the vicinity, and whether he could express an opinion as to market value, he was asked what was, in his opinion, "the market value of the property involved in this case as a whole before the raising of the streets." The question was objected to because the witness was incompetent to testify. Had the objection been sustained, it would have forced appellee to a more extensive examination of this witness and no doubt his qualifications could have been shown. Had the objection been overruled, without more, or had it been suggested to counsel to cross-examine as to qualifications, appellant would have been in no position to complain. In either case he was required to cross-examine the witness as to his competency: Hoffman v. B.-W. Coal Mining Co., 265 Pa. 476. But counsel were asked: "Do you have any authority for saying that an executive officer of the owning corporation is incompetent to testify? It is my im-

pression he is." Knickerbocker Ice Co. v. Phila., 246 Pa. 84, was a case where the court below excluded the testimony of the president of an ice company on the ground that the "witness had not been shown to be an expert in real estate values." On appeal we said, at page 88, that his testimony was not improperly excluded. "When the case is again tried it will be proper to show his competency as a witness familiar with the value of the property before and after the change of grade, and when this is done, if it be satisfactorily done, there can be no question as to his right to testify." An examination of that case shows that he was president of a very small company. Mr. Rowan was not the owner of property; the Air Brake Company is a very large corporation owning large areas of ground, and it becomes a matter of moment to ascertain that Rowan, its president, and a very important witness, knew sufficient of real estate values to enable him to testify.

In permitting the president to testify as an owner he was placed in a special class of witnesses. It was immaterial then how much appellant might cross-examine, his lack of knowledge of real estate values would have been immaterial. As an owner he would have been a competent witness on the record before us. He had shown a sufficient familiarity with his plant, its location and business to qualify him, but this court has placed officers of corporations in the same category as witnesses other than the owner. As Rowan was but one of three witnesses as to value without having special qualifications, unless we overrule Knickerbocker Ice Co. v. Phila., supra, this case must be reversed.

Had Rowan been cross-examined as to qualifications, it would have been brought out that he based his opinion on an option price: that could not furnish a basis for opinion evidence unless it further appeared there was a comparative relation between the option price and market value. Without this comparative evidence, an option price given some years before might be much higher than

the value of the property at the time of the taking. See McSorley v. Avalon Boro. School Dist., 291 Pa. 252, 256, where replacement value was offered.

We discuss briefly the remaining objections. After Rowan had testified as to value, he was asked in cross-examination to state whether he did not carry the property on the books of the company at $1,114,067.50, and not at $1,400,000. Having replied in the affirmative, he was asked if he did not use the former figure for tax purposes, with the further suggestion that the book value was used to avoid income tax. These questions were highly improper. The witness in his examination in chief had shown no basis for such cross-examination (Wissinger v. Coal Co., 271 Pa. 566), and had it been objected to, it should have been disallowed. It was an attempt to inject an idea into the case wholly foreign to the real issue. Not having been objected to, it was perfectly proper, after the assault that had been made on the witness's testimony in chief, to ask the question in redirect examination which was asked by appellee's counsel. The answer was nothing more than what could have been expected had the witness been asked as to a particular sale of a property. It was then the duty of appellant to cross-examine the witness as to whether the option price represented the fair market price.

Appellant has argued that the option price was submitted as evidence in chief. Counsel are mistaken, as the record shows. It was in redirect examination, and, as we have indicated, proper under the circumstances.

Evidence was submitted as to rental value of the property. We have not in this State established rental value as a separate basis for damages in realty cases. But as the jury returned a special verdict disallowing damages for this claim, we need not comment further on this evidence.

Appellant complains of the admission in evidence of the actual rent received for the property during construction. There is no error in the admission of this evidence

as reflecting on the market value of the property, but it is not admissible as an independent item of damages. Here is a piece of land formerly level with the street. The latter was raised from four to nine feet, interfering seriously with the renting of the property during the work of construction, and appellee did by this lose a large sum of money. Of course, appellant is not liable for all that loss, and the loss of rents cannot be shown as an independent item of damages, but it is an element to be considered in market value: Forster v. Rogers Bros., 247 Pa. 54, 64; Stone v. D., L. & W. R. Co., 257 Pa. 456; Lynn v. Dunmore Boro., 80 Pa. Superior Ct. 590, 593. Attention is called to the Act of April 21, 1915, P. L. 159.

The testimony as to the cost of restoring the property by filling and building abutments, retaining walls, etc., is not admissible as an independent item of damage, but is admissible as bearing on the market value of the property. This has been amply sustained by numerous cases: Ry. Co. v. McCloskey, 110 Pa. 436; Harris v. R. R. Co., 141 Pa. 242; Dawson v. Pgh., 159 Pa. 317, 346; Patton v. Phila., 175 Pa. 88; Coons v. McKees Rocks Boro., 243 Pa. 340; Hill v. Oakmont Boro., 47 Pa. Superior Ct. 261. Of course, items speculative in their nature cannot be considered: Kleppner v. Pgh., etc., R. R. Co., 247 Pa. 605, nor may items of cost which bear no real relation to the question of market value: McSorley v. Avalon Boro. School Dist., supra.

Judgment reversed, and a venire facias awarded.